FILED
Jul 08, 2019
10:08 AM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | |
|---|---|
| Charles Buckner,<br>        Employee,<br>v.<br>Ecolab Manufacturing, Inc.,<br>        Employer,<br>And<br>New Hampshire Ins. Co.,<br>        Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2018-01-0590<br><br>State File No.: 25427-2017<br><br>Judge Thomas Wyatt |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

On July 2, 2019, the Court conducted an Expedited Hearing to determine Charles Buckner's entitlement to surgery as prescribed by his authorized physician but twice denied following utilization reviews (URs). For the reasons below, the Court orders authorization of the recommended surgery.

### History of Claim

Mr. Buckner worked as a forklift operator for Ecolab, a contractor at the Chattanooga Volkswagen plant. While lifting containers of parts over his head, he experienced neck pain that ran down his arms. He reported the injury and received a panel from Ecolab, from which he selected orthopedist Dr. Jason Eck for authorized treatment.

Dr. Eck performed C4-5 and C5-6 fusion surgery in June 2017.[1] Over the next several months, Mr. Buckner consistently reported continuing neck pain with tingling, numbness and pain radiating down both arms to his hands.[2] His authorized physicians

---

[1] Authorization for this surgery followed a UR denial reversed by the Bureau's Medical Director.

[2] Mr. Buckner testified that he presently has periodic symptoms in his right arm but more frequently occurring left-arm and hand symptoms.

1

prescribed medication, trigger-point injections and physical therapy that did little to alleviate his symptoms.

Dr. Eck saw Mr. Buckner approximately ten times since the June 2017 surgery. On each occasion, he noted Mr. Buckner's reports of neck pain radiating into his upper extremities. In December 2017, Dr. Eck noted bilateral muscle weakness in Mr. Buckner's arms and ordered a CT scan and EMG to investigate these symptoms. He interpreted the CT to show "C5-6 mild to moderate bilateral foraminal narrowing." The EMG revealed "C5-6 foraminal stenosis with facet arthritis," as well as severe bilateral carpal tunnel syndrome and ulnar compression at the wrist. In May 2018, a pinprick test revealed that Mr. Buckner exhibited decreased sensation in the left C6-C8 nerve-root distribution. Dr. Eck documented that Mr. Buckner's symptoms have persisted to the present.

Mr. Buckner also saw Dr. Jerry Smith for pain management. In August 2017, Dr. Smith found decreased sensation to light touch in Mr. Buckner's right fingers and decreased arm reflexes. In March 2018, Dr. Smith added a finding of numbness in the left thumb. Dr. Smith's records continue to reflect these findings through the present.

Concerning the surgical recommendation at issue, after reviewing the diagnostic tests, Dr. Eck concluded that the indicated C5-C6 findings were causing Mr. Buckner's persistent neck pain and radicular symptoms. He recommended surgery to address the narrowing at the C5-C6 level. Ecolab submitted the recommendation to UR in June 2018.

The UR physician assessed the need for surgery based solely on a records review. Though he attempted to contact Dr. Eck, the UR physician never discussed the recommendation with him. Despite the foraminal narrowing and Mr. Buckner's continuing complaints following surgery and conservative treatment, the UR physician recommended non-certification of the surgery under the Official Diagnostic Guidelines (ODG) because the records allegedly contained "no documentation supportive of C6 nerve root impingement, either on imaging or evaluation." Dr. Eck appealed the UR denial to the Bureau's Medical Directors, who upheld the denial without discussion, as is their practice.

Dr. Eck resubmitted the surgical recommendation in January 2019. Ecolab again submitted the request to UR. This UR physician also assessed medical necessity based solely on a records review. He likewise tried unsuccessfully to reach Dr. Eck to discuss the matter. He recommended against certification because the records allegedly showed "no evidence of focal motor or sensory deficit, EMG findings,[3] or reflex changes, and no

---

[3] Mr. Buckner underwent a second EMG in May 2018 that revealed "no evidence of carpal tunnel syndrome, cervical radiculopathy, and peripheral neuropathy."

clear evidence of radicular pain to support the medical necessity of the requested surgery." The doctor further cited the lack of objective evidence of severe stenosis and the absence of diagnostic testing ruling out non-cervical explanations for Mr. Buckner's symptoms. The Bureau's Medical Directors again upheld the UR denial without discussion or personally examining the employee, as appears to be their standard procedure.

Mr. Buckner requested that this Court order authorization of the recommended surgery. He submitted Dr. Eck's affidavit, which stated his opinion that the surgery was medically necessary under the ODG. He asserted that the post-fusion CT scan showed "moderate nerve root impingement at levels which correlate with my physical examinations . . . and document sufficient objective findings to verify the persisting radiculopathy[,] warranting the surgery ordered."

Dr. Eck also concluded that the lack of EMG evidence of radiculopathy in the most recent EMG did not mandate a decision against the recommended surgery. He stated that "electrodiagnostic studies . . . have a certain amount of false negatives and must be correlated with physical examination and assessment of the patient." Dr. Eck stated that Mr. Buckner was "a compliant and legitimate patient" worthy of trust in his reports of continuing symptoms. Finally, he stated that he did not recommend surgery until conservative treatment proved insufficient to successfully manage Mr. Buckner's continuing symptoms.

## Findings of Fact and Conclusions of Law

This dispute focuses on differing opinions of the authorized treating physician and non-treating UR physicians (as affirmed by the Bureau's Medical Directors) regarding the necessity of post-fusion C5-6 surgery.[4] In determining which opinion to adopt, the Court considers *Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *17-18 (Aug. 31, 2016), which provides:

> [a] trial court can apply one of two potential presumptions to the issue of medical necessity in any given case. First, as codified in section 50-6-204(a)(3)(H), treatment recommended by an authorized physician is presumed medically necessary[.]
> Second, in circumstances where an employee establishes by expert medical evidence that the recommended treatment "explicitly follows the treatment guidelines" or "is reasonably derived therefrom, including allowances for specific adjustments to treatment," then the burden shifts

---

[4] Ecolab argued during the Expedited Hearing that Mr. Buckner's injury is not compensable because he complained of neck pain before he reported the current incident. However, it did not present evidence to counter Dr. Eck's opinion that Mr. Buckner's neck injury arose primarily out of and in the course and scope of employment.

to the employer to rebut the presumption of medical necessity by clear and convincing evidence. *See* Tenn. Code Ann. §§ 50-6-124(h), 204(a)(3)(I); Tenn. Comp. R. & Regs. 0800-02-25-.03(2).

Here, the Court applies the presumption found in subsection 50-6-204(a)(3)(H), which provides: "[a]ny treatment recommended by a physician . . . selected pursuant to this subdivision (a)(3) . . . shall be presumed to be medically necessary for treatment of the injured employee." Because Mr. Buckner selected Dr. Eck from a panel, the Court will order Ecolab to authorize the surgery unless the preponderance of the evidence dictates otherwise. *See Morgan,* at *17.

In *Creasman v. Waves, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 13, at *8 (Apr. 16, 2018), the Appeals Board cited the following considerations for weighing conflicting expert opinions: "[T]he qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991).

In comparing the opinions admitted into evidence, the Court finds the most pertinent point to be that Dr. Eck performed surgery on Mr. Buckner and has treated him on multiple occasions over the past few years. This has given him an opportunity to know Mr. Buckner on a personal level and become intimately involved with his care. In contrast, the UR physicians the Bureau's Medical Directors did not see Mr. Buckner at all, but they assessed medical necessity based solely on medical records. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman,* at 677.

Dr. Eck's greater familiarity with Mr. Buckner and the fact that he followed Mr. Buckner and made decisions regarding the non-surgical treatment of his post-fusion symptoms provided him with a better platform than the UR physicians and Medical Directors to provide a thorough assessment of Mr. Buckner's medical needs. Further, Dr. Eck's ability to examine Mr. Buckner clinically gave him a better opportunity to correlate Mr. Buckner's clinical presentation with diagnostic testing, as compared to the UR physicians and Medical Directors, who performed only record reviews. In view of this fact, the Court accepts Dr. Eck's explanation in support of the medical necessity of the recommended surgery over the contrary opinions of the UR physicians and Medical Directors.

In making the above ruling, the Court holds that the negative findings in the May 2018 EMG do not preponderate against Dr. Eck's recommendation. The Court credits Dr. Eck's statement that EMG studies sometimes show false negatives, and the doctor may give the results reduced weight if, as here, his clinical experience with the patient

and diagnostic testing, such as the post-fusion CT scan, otherwise support a diagnosis of radiculopathy. Dr. Smith also examined Mr. Buckner monthly since the fusion surgery and, like Dr. Eck, noted findings on examination of numbness and tingling in Mr. Buckner's left fingers both before and after the May 2018 EMG.

In view of the above, the Court holds that the preponderance of the evidence supports Dr. Eck's presumptively-correct opinion that the recommended surgery is medically necessary to treat Mr. Buckner's injury. Therefore, the Court orders that Ecolab promptly authorize the surgery.

This matter is set for a Status Hearing at **10:00 a.m. Eastern Time on September 3, 2019.** You must call toll-free at (855) 747-1721or (615) 741-306 to participate in the Status Hearing. You must call on the scheduled date and time to participate. Failure to call might result in a determination of the issues without your further participation.

**Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**It is ORDERED.**

**ENTERED July 8, 2019.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

# APPENDIX

Technical Record: The Court considered the following:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Objection to Decision on the Record
5. Order Setting In-Person Expedited Hearing
6. Notice of Expedited Hearing
7. Employee Brief
8. Employer Position Statement

Exhibits: The Court admitted the following into evidence:

1. Records of Center for Sports Medicine/Drs. Shay Richardson and Jason Eck
2. Records of Southeastern Spine/Dr. Jason Eck
3. Records of Siskin Spine and Rehabilitation/Dr. Jerry Smith
4. Affidavit of Charles Buckner
5. Affidavit of Dr. Jason Eck
6. Records of Center For Sports Medicine/Dr. Bradford Mitchell
7. Report of March, 16, 2017 CT of the cervical spine
8. Physical therapy notes
9. UR letter of Dr. Robin Simon
10. Medical Director's order for fusion surgery
11. Functional capacity examination
12. Report of December 13, 2017 CT of the cervical spine
13. UR letter of Dr. Luc Jasmin
14. Medical Director's agreement with UR surgery
15. UR letter of Dr. Avrom Simon
16. UR letter of Dr. Peter Garcia
17. Medical Director's agreement with UR surgery denial
18. Report of December 22, 2017 EMG/NCV
19. Report of May 24, 2018 EMG/NCV

# CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on July 8, 2019.

| Name | Certified Mail | First Class Mail | Email | Service sent to: |
|---|---|---|---|---|
| Tim Henshaw Employee | | | X | tim@mcmahanlawfirm.com<br>missy@mcmahanlawfirm.com |
| Doug Dooley Employer Attorney | | | X | Doug.dooley@leitnerfirm.com<br>Dawn.bailey@leitnerfirm.com<br>Kate.haley@leitnerfirm.com |

W/Permission

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____
**Employee**

v.

_____
**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):** _____ At Hearing: ☐Employer ☐Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____         2. Address: _____

3. Telephone Number: _____         4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | | |
|---|---|---|---|---|
| AFDC | $ _____ | per month | beginning | _____ |
| SSI | $ _____ | per month | beginning | _____ |
| Retirement | $ _____ | per month | beginning | _____ |
| Disability | $ _____ | per month | beginning | _____ |
| Unemployment | $ _____ | per month | beginning | _____ |
| Worker's Comp. | $ _____ | per month | beginning | _____ |
| Other | $ _____ | per month | beginning | _____ |

LB-1108 (REV 11/15)                                                      RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental   $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone    $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing     $ _____ per month |
| Gas | $ _____ per month | Child Care    $ _____ per month |
| Transportation | $ _____ per month | Child Support   $ _____ per month |
| Car | $_____ per month | |
| Other | $ _____ per month (describe: _____) | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe: _____ |

11. My debts are:

Amount Owed         To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____
NOTARY PUBLIC

My Commission Expires: _____